## ISAAC D. MARKS *v.* NASHVILLE MARINE AND FIRE INSURANCE COMPANY et al.

Where a vessel has been surveyed and condemned at Key West as unseaworthy by sentence of a Court of Admiralty, such sentence is not evidence in the courts of Louisiana of the facts or grounds on which the condemnation proceeded, nor is it *res judicata* as to the question of seaworthiness.

The right to abandon is to be tested by the actual facts at the *time of the abandonment*. If, at the time of the attempt to abandon, the thing insured is taken out of the hands and control of the assured by some peril or act not insured against, the insured cannot abandon.

Where a vessel had been so damaged by perils of the sea that she was forced to enter a port for safety, and was there unjustly libelled by passengers and sold for a return of the passage money upon the ground of her having been unseaworthy at the commencement of the voyage; *Held:* That the insured could not abandon and recover for a total loss because the insurers did not insure against the risk of loss by an illegal condemnation, but that the assured might recover the amount of the loss occasioned by damage from the perils of the sea incurred before the vessel was libelled.

APPEAL from the Fifth District Court of New Orleans, *Buchanan*, J. *Roselius* and *A. Marks*, for plaintiff. *Hunton* and *Bradford*, for defendants. The judgment of the court was pronounced by

SLIDELL, J. This action is upon a policy of insurance executed by the defendants. The insurance "is declared to be on two-fifths of the hull and

MARKS
*v.*
NASHVILLE
MARINE AND
FIRE
INSURANCE
COMPANY.

apparel of the schooner Relampago, her stores and passage money, as follows, viz : on the hull and apparel valued at $4000, to amount of $1600 ; on the stores and provisions, valued at $1500, to amount of $600; on the passage money, valued at $4000, to amount of $1600, from New Orleans to San Francisco, California, the risk to cease on the arrival of the vessel at her anchorage off San Francisco. A similar policy with the Mutual Safety Insurance Company, on two-fifths of the value as above; and the other fifth, the insured warrants not to insure."

The schooner sailed from New Orleans on the 27th January, 1849 ; encountered rough weather, and a very heavy sea, after being some days out, and sprung a leak. She put into Havana on the 6th February, but on account of the quarantine regulations of that port, left it and went to Key West, where she arrived on the 9th. A survey was immediately called, and on the 15th February, the surveyors reported the condition of the vessel, with an estimate of the necessary repairs, amounting to $2873 95. The captain then determined to send a messenger (the supercargo) to communicate with the owner in New Orleans, but the messenger was arrested at the suit of the passengers; and on the same day, the 16th February, the vessel, with her stores and provisions, was libelled, at the instance of the passengers, in the District Court of the United States at Key West, and taken out of the possession of the captain by the marshal. On the 22d February, 1849, a decree was made by that court, awarding the libellants a return of their passage money, on the ground that the vessel was unseaworthy at the inception of the voyage, and ordering that the property libelled be sold to satisfy the decree. The vessel, with her provisions and stores, was sold accordingly at marshal's sale, on the 26th February, and her proceeds distributed among the libellants, giving them a dividend of about forty per cent.

The plaintiff insists that he was entitled to abandon as for a technical total loss, and to recover the whole amount of his insurances. The court below rejected his claim for the provisions and stores. but allowed it for the hull and the passage money. The defendants appealed, and the plaintiff, in his answer to the appeal, asks a judgment for his whole demand.

The first ground upon which the defendants resist the plaintiff's action is, the alleged unseaworthiness of the vessel at the inception of the voyage. The judge below was decidedly of the opinion that this branch of the defence was not sustained by the evidence ; and in that opinion we concur. It is true that upon this point the conclusion adopted by the judge below and by this court, conflicts with the opinion of the learned judge of the United States Court at Key West, as announced in the admiralty proceedings already noticed. That opinion, so far as we can infer, was made solely upon the report of survey at Key West. We are not prepared to say that we would have drawn a similar conclusion from that document ; but however that might be, we have now before us a mass of evidence which was not before that tribunal. It comprises the testimony of ship carpenters who repaired the vessel at various times, and more particularly for the California voyage, and of others who knew the vessel before the inception of the voyage. Under this evidence, we would not be warranted in disturbing the conclusion adopted by the court below.

It was said in argument, that the question of seaworthiness was directly in issue before the Admiralty Court; that its decree was based wholly upon the ground of unseaworthiness at the commencement of the voyage ; that the plaintiff in his contract of insurance warranted the vessel's seaworthiness ; that the decree negatives that warranty, and is conclusive upon the question here ; and

MARKS
v.
NASHVILLE
MARINE AND
FIRE
INSURANCE
COMPANY.

we are referred, in support of this proposition, to the Treaties of Mr. Phillips and Mr. Arnould. 2 Phillips, 694, 705, 707. 1 Arnould, 641.

It may be deduced from these authorities, that the sentence of a foreign Court of Admiralty of competent jurisdiction, condemning a vessel as enemy's pro-perty, or as lawful prize, or as having violated the laws of nations or the faith of treaties, will be considered as conclusive against a warranty of neutrality. But we have found nothing in the authors citied going to the extent contended for at bar. Mr. Arnould, on the contrary, in treating of the warranty of seaworthiness says: " That where a ship has been survey,ed and condemned abroad as unseaworthy by the sentence of a Vice-Admiralty Court, such sentence is evidence of nothing but the mere fact of condemnation ; it is no evidence of the facts or grounds on which the condemnation proceeded." See also *Wright* v. *Barnard*, cited in Park. on Ins., chap. 20, p. 548.

The next question is, whether the defendants can be held for a total loss, so far as concerns the vessel. As the vessel was not utterly lost on the voyage by perils of the sea, but still existed and arrived at Key West in a damaged condition, the plaintiff, in order to go for a total loss, must show a valid abandonment. As regards notice the case is loosely presented. If notice of abandonment was given to the particular underwriter, it was not directly, but indirectly, through the other underwriter of the same risk. Assuming, however, that there was sufficient notice, there was no acceptance of abandonment ; and the question remains whether the abandonment was rightfully made.

The right to abandon is to be tested by the actual facts at the time of the abandonment. If, at the time of the attempt to abandon, the thing insured is taken out of the hands and control of the assured by some peril or act not insured against by the policy, the insured cannot abandon. In *Rice* v. *Homer*, 12 Mass. 230, a ship being insured against sea damage—capture and condemnation by all powers being excepted in the policy—suffered damage on her passage by perils of the sea to three-fourths of her value, and one-third of her cargo was thrown overboard to preserve the lives of the crew and the residue of the cargo. In consequence of this misfortune, she was forced into a port of France, where the vessel and the remaining cargo were seized, and afterwards sold by officers of the government, it was held that the assurers could not abandon. See also Phillips on Ins., vol. 2, p. 247.

If there was any notice of abandonment in this case, it is not shown that it was given before the vessel was taken out of the possession of the assured by an act for which the defendants were not responsible. The underwriter did not take upon himself the risk of unjust claims against the vessel while in port, and their enforcement by judicial seizure and sale.

The plaintiff is, however, entitled to recover for the injury to the vessel sustained by the perils of the sea which the underwriters took upon themselves. This liability, if the vessel was seaworthy, seems to be conceded by the defendants ; but they contend that the evidence is not sufficiently certain as to the expense of repairing the vessel. We have had some difficulty upon this point ; but the district judge was satisfied upon that score, as is clearly inferrible from his decree ; and we do not feel authorized, upon a revision of the evidence and the circumstances of the case, to dissent from him. There is no evidence to sustain the plaintiff's claim as to the provisions.

As to the passage money, we think that portion of the claim was improperly allowed by the court below. The passage money had been paid in advance at New Orleans ; and the rule of law we understand to be, that if the voyage has

MARKS
v.
NASHVILLE
MARINE AND
FIRE
INSURANCE
COMPANY.

been commenced, and is interrupted by reason of injuries sustained by perils of the sea, and the passengers, by their own act, deprive the captain of an election to repair and continue the voyage, the owner is entitled to retain the passage money previously paid to him. See Abbott on Shipping, 285 and 497, and note. See also 1 Peters, 207. *Delouches v. Peck*, 9 Johnson, 210. *Griggs v. Austin*, 3 Pick. 20. It is true the plaintiff was compelled to refund a portion of the money by the sale of the vessel under the decree at Key West. But the judge based that decree upon the supposed unseaworthiness of the vessel at the inception of the voyage. The loss of passage money which the plaintiff has sustained, was not occasioned by a peril within 'the policy, but by an unjust claim prosecuted at Key West, and followed up by a decree there, which, even if justified by the evidence presented to that court, is inconsistent with the true rights of the parties there litigant. As we have already said, the under-writers did not take the risk of such a claim or such a decree.

It is therefore decreed, that the judgment of the district court be reversed; and it is further decreed, that the plaintiff recover from the defendants the sum of $1149 58, with interest from the judicial demand, and costs in the court below; those of the appeal to be paid by the plaintiff.